IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALYSSA BALLY AND COURTNEY MAHARAJ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | § § § § § | |
| *Plaintiffs,* | § § | Civ. No. 3:17-cv-30-DB |
| V. | § § | |
| DREAMS CABARET L.L.C. AND JOSE FONG, | § § § § | |
| *Defendants.* | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Alyssa Bally ("Bally") and Courtney Maharaj ("Maharaj") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this First Amended Complaint against Dreams Cabaret, L.L.C. ("Dreams") and Jose Fong ("Fong") (collectively, "Defendants"), and would show as follows:

### I.     PRELIMINARY STATEMENT

1.     This lawsuit seeks damages against Defendants for violations of the Fair Labor Standards Act ("FLSA"), as amended (29 U.S.C. § 201- *et. seq*.) and, in the alternative, the Texas Minimum Wage Act ("TMWA"). Specifically, Plaintiffs allege that Defendants violated the FLSA by unlawfully designating their dancers as independent contractors and failing to pay dancers minimum wages and overtime. Plaintiffs further allege in the alternative that Defendants violated the TMWA by failing to pay dancers minimum wages. Plaintiff Bally, in her individual capacity, also alleges that Defendants unlawfully terminated her for engaging in activity protected by the FLSA. Plaintiffs seek to recover unpaid minimum wages, unpaid overtime

1

wages, statutory liquidated damages, compensatory damages, punitive damages, and attorneys' fees. Plaintiffs seek to certify this matter as a collective action under the FLSA and the TMWA.

## II.     PARTIES

2. Plaintiff Bally is an individual residing in El Paso, Texas. Bally is a former dancer for Defendants.

3. Plaintiff Maharaj is an individual residing in Arkansas. Maharaj is a former dancer for Defendants.

4. Defendant Dreams is a limited liability company organized under the laws of Texas with its principal place of business in El Paso, Texas. It has previously appeared in this lawsuit.

5. Defendant Fong is, and at all times hereinafter mentioned was, owner of Defendant Dreams and actively manages, supervises and directs the business affairs and operations of Defendant Dreams, and acts and has acted, directly and indirectly, in the interest of Defendant Dreams in relation to its employees and is an employer of these employees within the meaning of the FLSA and the TMWA. He has previously appeared in this lawsuit.

6. At all times during Plaintiffs' employment, Defendants were joint employers of Plaintiffs and the putative class members under 29 C.F.R. § 791.2 and Tex. Lab. Code § 62.002(6).

## III.     JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.SC. §§ 1331 and 1345, and § 16(b) of the FLSA, 29 U.S.C. § 216(b), which provides, "An action to recover liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself

and themselves and other employees similarly situated." This Court has supplemental jurisdiction over Plaintiffs' alternative TMWA claims pursuant to 28 U.SC. § 1367.

8. Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Defendants employed Plaintiffs and all others similarly situated to work at Dreams Cabaret's location in El Paso, Texas.

## IV.   FACTUAL ALLEGATIONS

9. Defendant Dreams is an adult entertainment establishment in El Paso, Texas.

10. At all times hereinafter mentioned, Defendant Dreams has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendant Dreams has been, though operation or common control, engaged in the performance of related activities for a common business purpose.

11. At all times hereinafter mentioned, Defendant Dreams has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that it has an annual gross volume of sales made or business done of not less than $500,000.

12. In the alternative, in the event that the FLSA does not apply to Defendants, Plaintiffs are protected by the TMWA, Tex. Lab. Code § 62.051.

13. Defendant Fong is the owner of Dreams. As owner, Mr. Fong possesses the power to hire and fire Plaintiffs and all others similarly situated, and he uses that power. He supervises

3

and controls the conditions of employment for Plaintiffs and all others similarly situated, including actively supervising Plaintiffs. He determines and approves the rate and method of payment for Plaintiffs and all others similarly situated. He is ultimately responsible for maintaining employment records.

**A.     Defendants Violate the FLSA By Failing to Pay Their Dancers Minimum Wage and Overtime and the TMWA By Failing to Pay Their Dancers Minimum Wage.**

14.     Plaintiff Bally worked for Defendants as a dancer from May 2014 to February 10, 2017. Plaintiff Maharaj worked for Defendants as a dancer from approximately 2012 to July 2016.

15.     Defendants classify dancers, including Plaintiffs, as independent contractors, exempt from the FLSA and the TMWA. However, as described below, Defendants exercise substantial control over their dancers and the manner in which they conduct their work.

16.     Defendants require that Plaintiffs and other dancers pay "rent" to the club for dancing. Specifically, Defendants charge a fluctuating rate based on the time of day that a dancer begins work. The later a dancer begins work, the more in rent she must pay.

17.     In addition to the rent Plaintiffs and other dancers must pay, Defendants require that Plaintiffs and other dancers remain at work for at least six hours every night they work. Upon arrival at work, all dancers must sign in with the DJ. Defendants require dancers to work until the end of their shift. Late shift dancers must be on the floor until closing time, and they may not leave until all customers have left the premises. All dancers are required to seek management approval to change a shift. If a dancer leaves early, she is fined $20.00.

18.     Defendants also set rules for dancers' use of the performance stages. If a dancer misses a stage, she must pay an additional fine.

4

19. Defendants set the prices that Plaintiffs and other dancers may charge to customers for dances. Plaintiffs do not exercise any discretion in setting prices.

20. Defendants set requirements for Plaintiffs and other dancers' attire. Specifically, all dancers must wear heels of a certain height. Furthermore, dancers must be topless and down to their g-string or thong by the second song of their shift.

21. Defendants inform all dancers that management has the last word on music played and stage lighting.

22. Defendants do not permit Plaintiffs and other dancers to dance at other clubs and threaten Plaintiffs and other dancers with termination for doing so.

23. Defendants are responsible for club advertising, business hours, refreshments, and facilities. Defendants are also responsible for customer volume control.

24. Defendants inform all dancers in their work agreement, "LADIES, YOU MUST MAINTAIN A POSITIVE ATTITUDE AND TREAT THE CUSTOMER LIKE A KING!"

25. Defendants also inform all dancers in their work agreement that "[a]ny violation of these rules and policies can lead to warning, suspensions, fines or terminations."

26. Defendants require Plaintiffs and all dancers to fill out an "Employment Application," including a list of prior employment and references. The "Employment Application" requires a dancer to certify that "I understand that false information may be grounds for not hiring me or for immediate termination of employment at any point in the future if I am hired."

27. The dancing services provided by Plaintiffs and all others similarly situated are integral to Defendants' business. Defendant Dreams is an adult entertainment club; the primary form of entertainment provided at Dreams is the dancing performed by Plaintiffs.

28. Dancers, including Plaintiffs, regularly work approximately twenty to thirty hours per week, and in several weeks they work over forty hours per week. Despite these hours worked, Plaintiffs and other dancers similarly situated never receive an hourly wage or any other compensation from Defendants. Instead, Plaintiffs and other dancers can keep a portion of the tips they receive directly from customers, although Plaintiffs are first required to pay "rent" to Defendants and also to tip out the DJ, house mother, and bartender out of the tips they earn.

29. Defendants do not pay Plaintiffs and other dancers either the standard hourly minimum wage of $7.25 or the legal minimum wage for a customarily tipped employee of $2.13 per hour. Defendants also do not pay Plaintiffs and other dancers time and one half their regular hourly rate for hours worked beyond forty per week.

30. Defendants are not entitled to claim a "tip credit" under Section 203(m) of the Fair Labor Standards Act or Section 62.052 of the Texas Minimum Wage Act. Specifically, Defendants never pay Plaintiffs and other dancers a cash wage of at least $2.13 per hour. Defendants never informed Plaintiffs and other dancers of the FLSA and TMWA's tip credit provisions and Defendants' intention to take a tip credit to make up the difference between the tipped minimum wage and the statutory minimum wage. Defendants do not permit Plaintiffs and other dancers to retain all their tips, instead keeping some of the tips for Defendants' own use. Defendants also do not ensure that Plaintiffs' and other dancers' cash wages plus the tip credits equal the minimum wages required each week. Defendants did not pay Plaintiffs and other dancers any cash wages, and Defendants did not keep any records of hours Plaintiffs and other dancers worked or the amount of tips they earned. Therefore, it is not possible for them to ensure that Plaintiffs and other dancers received a proper tip credit. Because Defendants cannot claim a

tip credit within the meaning of the FLSA, Plaintiffs and all others similarly situated are entitled to the full statutory minimum wage and overtime rates for all hours worked.

31. Additionally, Defendants fail to make, keep, and preserve accurate records with respect to Plaintiffs and all others similarly situated, including hours worked each workday and total hours worked each workweek, as required by 29 U.S.C. §§ 211(c), 516.28, supporting federal regulations, and Tex. Lab. Code § 62.003.

**B. Defendants Terminate Plaintiff Bally Because She Filed This Lawsuit Alleging FLSA Violations.**

32. Plaintiffs filed this lawsuit on February 1, 2017, alleging that Defendants violate the FLSA by failing to pay them minimum wage and overtime. *See* (DKT. NO. 1). Plaintiff Bally most recently worked a shift at Defendant Dreams on or about February 3, 2017. On February 7, 2017, the Original Complaint in this lawsuit was served on Fong in his individual capacity and in his capacity as registered agent for Dreams. *See* (DKT. NO. 4 at 2, 4).

33. On February 10, 2017, Plaintiff Bally attempted to work her first shift at Dreams since the lawsuit was served on Defendants. She arrived at Dreams at approximately 8:30 p.m. and was preparing for work. A bouncer, known only to Bally as "Biscuit," came into the locker room and told her, "We're cleaning house. [Club Manager] Hector [Granillo] says you're fired." When Bally asked Biscuit why she was being fired, Biscuit claimed that certain military customers had complained that Bally had been overcharging them. Bally has never charged customers more than Defendants permit her to charge.

34. Bally informed Biscuit, in substance, "That's funny, because I have never done overcharged customers and I have never heard about any complaints before. Why don't you tell me what this is really about?" Biscuit refused to give Bally more information, and he refused to allow Bally to speak to Granillo about her termination.

35. Bally requested that Dreams return her license, which pursuant to an El Paso County ordinance identifies her as an employee of a sexually-oriented business. Without the license, Bally is legally prohibited from working at another dance club. The license is Bally's property. Dreams refused to return her license and forced her to leave the premises.

36. On Wednesday, February 15, 2017 at approximately 7 p.m., Bally returned to Dreams to request her license back. Because Granillo was not present and only he and Fong have access to the licenses, the bouncer told her to return later that evening to obtain her license. Bally returned at approximately 2:30 a.m. the next morning and asked for Granillo. Granillo instructed her to speak to Biscuit, and Granillo returned to his office. Biscuit informed Bally that the licenses were currently locked in the club's safe, and only Fong can access the safe. Because Fong was not present, Biscuit informed Bally to return the next day. Bally questioned whether the licenses were in fact locked in the safe, because El Paso County ordinance requires the licenses be accessible at all times for inspection by the Sheriff's office. Biscuit refused to return Bally's license.

37. Bally then went outside the club, where several El Paso Sheriff cars were gathered. Bally approached a Sheriff's deputy and asked for his assistance in obtaining her license. The deputy informed her that he would not help. Bally confirmed with the deputy that if he asked Dreams, the club would be required to return her license, but the deputy was not willing to assist. The deputy informed Bally that he would charge her with criminal trespass if she did not leave Dreams, and that she would be arrested if she returned. Bally immediately left the premises, and to date has been unable to obtain her license to work.

38. Defendants terminated Bally and retained her work license in retaliation for filing an FLSA lawsuit against them.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION: FLSA – MINIMUM WAGES
### [Bally, Maharaj, and All Others Similarly Situated]

39. Plaintiffs incorporate by reference all the allegations made in the preceding paragraphs.

40. Defendants have engaged in a pattern, policy, and practice of violating the FLSA, as detailed above, by misclassifying Plaintiffs and all others similarly situated as independent contractors and not paying them minimum wages.

41. The minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et. seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the putative class members.

42. At all relevant times, Plaintiffs and the putative class members were employed by an entity engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

43. At all relevant times, Plaintiffs and the putative class members were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

44. At all relevant times, Defendants have been an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (r), and (s).

45. At all relevant times, Defendants employed Plaintiffs and the putative class members within the meaning of 29 U.S.C. § 203(g).

46. Defendants have engaged in a policy and/or practice of failing to pay Plaintiffs and the putative class members the applicable minimum wage for all hours Defendants suffered or permitted them to work.

47. As a result of the minimum wage violations, Plaintiffs and the putative class members have suffered damages in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

48. Defendants' unlawful conduct has been willful and intentional. Defendants were aware or should have been aware that the practices described herein are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the putative class members.

49. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

50. Members of the putative class are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consent to Join this action. 29 U.S.C. § 216(b).

### **SECOND CAUSE OF ACTION: TMWA – MINIMUM WAGES**
### **[Bally, Maharaj, and All Others Similarly Situated]**

51. Plaintiffs incorporate by reference all the allegations made in the preceding paragraphs.

52. Defendants have engaged in a pattern, policy, and practice of violating the TMWA, as detailed above, by misclassifying Plaintiffs and all others similarly situated as independent contractors and not paying them minimum wages.

53. If the minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et. seq.*, and the supporting federal regulations, do apply to Defendants and do not protect Plaintiffs and the putative class members, Plaintiffs are entitled to minimum wages pursuant to the Texas Minimum Wage Act, Tex. Lab. Code § 62.001 *et seq.*

54. At all relevant times, Plaintiffs and the putative class members were employees of Defendants within the meaning of Tex. Lab. Code § 62.002(5).

55. At all relevant times, Defendants employed Plaintiffs and the putative class members within the meaning of Tex. Lab. Code § 62.002(4), (6).

56. Defendants have engaged in a policy and/or practice of failing to pay Plaintiffs and the putative class members the applicable minimum wage for all hours Defendants suffered or permitted them to work.

57. As a result of the minimum wage violations, Plaintiffs and the putative class members have suffered damages in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to Tex. Lab. Code § 62.201 *et seq*.

58. Members of the putative class are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consent to Join this action. Tex. Lab. Code § 62.203.

### THIRD CAUSE OF ACTION: FLSA – OVERTIME WAGES
### [Bally, Maharaj, and All Others Similarly Situated]

59. Plaintiffs incorporate by reference all the allegations made in the preceding paragraphs.

60. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et. seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the putative class members. Defendants have failed to pay Plaintiffs and the putative class members overtime wages at time-and-a-half for hours that they worked over 40 hours in a workweek.

61. As a result of Defendants' unlawful acts, Plaintiffs and the putative class members have been deprived of overtime compensation in amounts to be determined at trial, and

are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

62. Defendants' unlawful conduct has been willful and intentional. Defendants were aware or should have been aware that the practices described herein are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the putative class members.

63. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## **FOURTH CAUSE OF ACTION: FLSA – RETALIATION**
### **[Bally, in her individual capacity]**

64. Plaintiffs incorporate by reference all the allegations made in the preceding paragraphs.

65. Under 29 U.S.C. §215(a)(3), it is an unlawful employment practice for an employer to discriminate against any of its employees because that employee engaged in protected conduct.

66. Defendants retaliated and/or discriminated against Plaintiff Bally for participating in and filing this lawsuit on February 1, 2017.

67. After Defendants were served with the Original Complaint in this lawsuit on February 7, 2017, Defendants immediately terminated Bally at her next work shift on February 10, 2017. Defendants would not have terminated Bally "but for" her protected activity in participating in and filing a lawsuit alleging violations of the FLSA.

## VI.     COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) and, alternatively, Tex. Lab. Code § 62. 203.

68.     Plaintiffs incorporate by reference all the allegations made in the preceding paragraphs.

69.     Pursuant to Section 16(b) of the FLSA and Tex. Lab. Code § 62.203, Plaintiffs bring this Complaint as a collective action, on behalf of themselves and all persons similarly situated who consent to join this litigation by filing a written consent with the Court and who also agree to be represented by Plaintiffs' counsel, such persons making claims under the FLSA for the three years (and under the TMWA for the two years) preceding the filing of this Complaint or the filing with the Court of each such person's written consent to joinder until entry of judgment after trial.

70.     Defendants have a common policy or scheme of paying their dancers tips only, thereby denying their dancers all minimum and overtime wages. As a result of this common policy or scheme, Defendants wrongfully denied dancers the regular minimum wage of $7.25 per hour for the first forty hours of work each week and the overtime wage of $10.88 per hour for all hours worked in excess of forty in a workweek.

71.     Therefore, the Court should certify a collective action of all current and former dancers employed by Defendants at any time during the three years preceding the filing of this action who are paid only in tips. Plaintiffs are informed and believe, and based thereon, allege that there are putative FLSA/TMWA class members who could "opt-in" to this class. The actual number of FLSA/TMWA class members is readily ascertainable by a review of Defendants' records through appropriate discovery, and Plaintiffs propose to take proceedings in this action to have such persons notified of this litigation and given an opportunity to file written consents to join this litigation.

## VII. ATTORNEYS FEES AND COSTS

72. Plaintiffs are entitled to an award of attorney fees and costs under 29 U.S.C. §216(b) and Tex. Lab. Code § 62. 205.

## VIII. DAMAGES

73. As a direct and proximate result of Defendants' actions, Plaintiffs suffered injuries and damages and seek the following:

   a. actual and liquidated damages for unpaid minimum wages under the Fair Labor Standards Act and the Texas Minimum Wage Act;

   b. actual and liquidated damages for unpaid overtime wages under the Fair Labor Standards Act;

   c. back pay;

   d. equitable relief including, but not limited to, front pay;

   e. compensatory damages (including past and future mental anguish);

   f. punitive damages;

   g. reasonable attorney's fees under the Fair Labor Standards Act and the Texas Minimum Wage Act;

   h. pre-judgment and post-judgment interest as provided by law;

   i. all costs of court; and

   j. any other relief to which Plaintiffs may be entitled, whether in law or equity.

## PRAYER

74. Plaintiffs pray for judgment against Defendants as follows:

(a) actual and liquidated damages for unpaid minimum wages under the Fair Labor Standards Acts and the Texas Minimum Wage Act;

(b) actual and liquidated damages for unpaid overtime wages under the Fair Labor Standards Acts;

(c) back pay;

(d) equitable relief including, but not limited to, front pay;

(e) compensatory damages (including past and future mental anguish);

(f) punitive damages;

(g) reasonable attorney's fees under the Fair Labor Standard Act and the Texas Minimum Wage Act;

(h) pre-judgment and post-judgment interest as provided by law;

(i) all costs of court;

(j) certification of this matter as a collective action; and

(k) any other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Lawrence Morales II
Lawrence Morales II
State Bar No. 24051077
Attorney In Charge
lawrence@themoralesfirm.com
Allison S. Hartry
State Bar No. 24083149
ahartry@themoralesfirm.com
**THE MORALES FIRM, P.C.**
6243 IH-10 West, Suite 132
San Antonio, Texas 7820
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2017, I served the foregoing instrument on admitted counsel of record via the Court's CM/ECF system.

/s/ Allison S. Hartry_____
Allison S. Hartry
