IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2018 JAN 16  PM 4:17

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

ALYSSA BALLY and COURTNEY          §
MAHARAJ, on behalf of themselves and  §
all others similarly situated,        §
    Plaintiffs,                     §
                                    §
v.                                    §          **EP-17-CV-30-DB**
                                    §
DREAMS CABARET, LLC                   §
et al.,                               §
    Defendants.                     §

## MEMORANDUM OPINION

    On this day, the Court considered Plaintiffs Alyssa Bally and Courtney Maharaj's,

on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs") "Motion for

Partial Summary Judgment Regarding Liability" ("Motion"), filed in the above-captioned case

on October 27, 2017.   Therein, Plaintiffs ask the Court to grant partial summary judgment in

their favor regarding liability against Defendants Jose Fong, Dreams Cabaret, LLC, Fion Sunrise,

LLC, and Fong Sunrise, LLC (collectively, "Defendants").   On November 13, 2017,

Defendants filed their "Response to Plaintiffs' Motion for Partial Summary Judgment Regarding

Liability" ("Response").   On November 17, 2017, Plaintiffs filed their Reply to Defendants'

Response.   By a short order, on December 4, 2017, the Court denied Plaintiffs' Motion.   The

Court will now explain the reasons for its decision.

## BACKGROUND

    This lawsuit is a collective action brought under the Fair Labor Standards Act of

1938 ("FLSA"), 29 U.S.C. § 201 et seq.   Plaintiffs are former exotic dancers for Defendants in

El Paso, Texas.   Plaintiffs claim that Defendants misclassified them as independent contractors

and, as a result, failed to pay them minimum wage and overtime.   Plaintiffs seek to recover

unpaid minimum wages, unpaid overtime wages, statutory liquidated damages, compensatory damages, punitive damages, and attorneys' fees.   Defendants counter that, as a matter of economic reality, Plaintiffs were not Defendants' employees and, therefore, were exempt from the FLSA's minimum wage and overtime provisions.

Defendants Fong Sunrise, LLC ("Fong") and Fion Sunrise, LLC ("Fion") are two adult entertainment businesses in El Paso, Texas, that own and operate Defendant Dreams Cabaret ("the nightclub"), another adult venue located in the city.   Pls.' 2d Am. Compl., ECF No. 24, ¶¶ 10–11; Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 4–6.   Defendant Jose Fong ("Mr. Fong") owns fifty-one percent of Fong[1] and all of Fion.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 4–6.   Plaintiff Alyssa Bally worked for Defendants as a dancer from 2014 to 2017.   Pls.' 2d Am. Compl., ECF No. 24, ¶ 16.   Plaintiff Courtney Maharaj worked for Defendants as a dancer from 2012 to 2016.   *Id.*   Hector Granillo ("Mr. Granillo") worked as a disk jockey and later as a general manager for Defendants from 2012 to 2017.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 6–7.

Plaintiffs' dancing is the only type of entertainment that the nightclub provides. *Id.*, Ex. 1, at 52; Pls.' 2d Am. Compl., ECF No. 24, ¶ 29.   While the nightclub does not require dancers to have prior experience or training to perform, dancers must pay for their costumes. Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 47; *Id.*, Ex. 2, at 55.   The amount that dancers spend on their costumes varies, but costumes typically consist of underclothing.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 55.   Further, dancers are required to sign in when they report to perform and pay the nightclub rent.   *Id.*, Ex. 1, at 11, 21–23; Pls.' 2d Am. Compl., ECF No. 24,

---

[1] In his deposition testimony, Mr. Fong stated that Adan Fong, his son, owns the other fifty-one percent.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 4–5.   The Court notes that a discrepancy exists in the percentage of Fong that Mr. Fong and his son own.

¶¶ 18–19.   Additionally, the nightclub has a policy that calls for dancers to have a license to work. Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 54.   Therefore, a dancer must pay $50 dollars and get fingerprinted to obtain a license with the sheriff.   *Id.*   El Paso County further requires that dancers' licenses be kept on the premises where they work or perform.   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 15.

Defendants do not pay compensation to any dancer.   Pls.' 2d Am. Compl., ECF No. 24, ¶ 30.   Compensation is limited to the tips that dancers receive from customers for performing on stage and for performing private table dances.   *Id.*   However, Defendants spend between $448,000 and $520,000 dollars per year in maintaining and promoting the nightclub. Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 49–55.   This includes the monthly $10,000 dollars that Defendants allocate to radio and newspaper advertisements.   *Id.* at 50.   Additionally, Defendants exclusively decide the hours that the nightclub operates; the type of drinks that are provided to customers; the nightclub's location; the way the nightclub looks on the inside, including the lighting, the stage, the dressing rooms, and the furniture; the amount of the cover charge; the total price that it takes to get into the nightclub; and the method by which to advertise the nightclub.   *Id.* at 48–51; Pls.' 2d Am. Compl., ECF No. 24, ¶ 25.

On April 7, 2017, Plaintiffs filed their Second Amended Complaint, categorized as a collective action, on behalf of themselves and all persons similarly situated who consented to join the litigation.   The Second Amended Complaint includes four causes of action: (1) violation of the FLSA by misclassifying Plaintiffs and all others similarly situated as independent contractors and not paying them minimum wages, (2) violation of the Texas Minimum Wage Act by misclassifying Plaintiffs and all others similarly situated as independent contractors and not paying them minimum wages, (3) violation of the FLSA by misclassifying Plaintiffs and all others

3

similarly situated as independent contractors and not paying them overtime wages, and (4)

retaliatory discharge.   Pls.' 2d Am. Compl., ECF No. 24, ¶¶ 41–69.   On October 27, 2017,

Plaintiffs filed their Motion.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).   "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by . . . citing to particular parts of materials in the record . . . ."   Fed. R. Civ.

P. 56(c)(1).   "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a

genuine issue of material fact."   *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th

Cir. 2012) (citing *Celotex*, 477 U.S. at 323).   Where the burden of proof lies with the nonmoving

party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case."

*Celotex*, 477 U.S. at 325.   While the moving party "must demonstrate the absence of a genuine

issue of material fact, it does not need to negate the elements of the nonmovant's case."   *Duffie v.

United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d

536, 540 (5th Cir. 2005)).   "On the other hand, 'if the movant bears the burden of proof on an

issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he

must establish beyond peradventure all of the essential elements of the claim or defense to warrant

4

judgment in his favor.'"  *Alzuraqi v. Grp. 1 Auto., Inc.*, 921 F. Supp. 2d 648, 657 (N.D. Tex. 2013) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit."  *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response."  *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim."  *Id.* (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004)) (citation omitted).  "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal citations omitted).  "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party."  *Id.* (citing *Anderson*, 477 U.S. at 255).

## ANALYSIS

In their Motion, Plaintiffs raise two arguments: (1) that Defendants misclassified them as independent contractors and, therefore, owe them minimum and overtime wages for all

hours worked under the FLSA; and (2) that Mr. Fong is an employer under the FLSA.[2]   Pls.'

Mot. Partial Summ. J., ECF No. 40, at 7, 18.   Defendants claim that Plaintiffs' summary

judgment evidence fails to establish that Plaintiffs were Defendants' employees and that Mr.

Fong is an employer under the FLSA.[3]   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 5,

18.   Since the Court finds that partial summary judgment cannot be granted because a fact issue

exists regarding Plaintiffs' classification under the FLSA, the Court will not address Plaintiffs'

second argument, whether Mr. Fong is an employer.

    In determining whether an individual is an "employee" within the meaning of the

FLSA, the central question is "whether the alleged employee, as a matter of economic reality, is

economically dependent upon the business to which she renders her services."   *Reich v. Circle

C Invs., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993) (citing *Brock v. Mr. W Fireworks Inc.*, 814 F.2d

1042, 1043 (5th Cir. 1993), *cert. denied*, 484 U.S. 924 (1987)).   Stated differently, the main

focus is on "whether the individual is, as a matter of economic reality, in business for herself."

*Id.* (citing *Donovan v. Tehco*, 642 F.2d 141, 143 (5th Cir. 1981)).   The contractual designation

of a worker as an independent contractor is not necessarily controlling.   *Thibault v. Bellsouth

Telecomms., Inc.*, 612 F.3d 843, 845–46 (5th Cir. 2010).

---

[2] Plaintiffs concede that issues of material fact remain for the rest of their claims, so they move for partial summary judgment on liability only and reserve the issue of damages for trial.   Pls.' Mot. Partial Summ. J., ECF No. 40, at 7 n.6.

[3] Additionally, Defendants claim that Plaintiffs' summary judgment evidence fails to establish that Plaintiffs were engaged in interstate commerce when performing their duties or were employed in an enterprise engaged in interstate commerce.   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 2.   However, in their "Notice of Stipulation Regarding Plaintiffs' Motion for Partial Summary Judgment," filed on November 20, 2017, Plaintiffs note that issues of material fact remain for trial regarding individual or enterprise coverage.   Pls.' Notice Stipulation, ECF No. 43, at 2.   The Court takes notice of this stipulation and does not address this argument in its Opinion.

To determine the degree of an individual's dependency, five factors must be considered: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship."  *Reich*, 998 F.2d at 327.   These factors are only guidelines in determining employee status and no single factor is independently determinative in the analysis.  *Id.* (citing *Brock*, 814 F.2d at 1054).

The Court finds that the second and fourth factors weigh in favor of employee status under the FLSA.   However, partial summary judgment cannot be granted because a fact issue exists regarding the first, third, and fifth factors.   The Court now addresses the five factors.

### 1.  Degree of Control Defendants Exercised over Plaintiffs

A fact issue exists regarding the degree of control that Defendants exercised over Plaintiffs.   Plaintiffs claim that Defendants exercise a great degree of control over the dancers. Pls.' Mot. Partial Summ. J., ECF No. 40, at 10.   However, the record contains evidence that contradicts Plaintiffs' argument.

In *Reich*, the Fifth Circuit considered the first factor and found "employee status" when a nightclub exercised a great degree of control over its dancers.   998 F.2d at 327.   The dancers were required to comply with weekly work schedules compiled with their input, fined for absences and tardiness, and instructed to charge at least $10 dollars for table dances and $20 dollars for couch dances.  *Id.*  Although the dancers provided their own costumes, the costumes had to meet specific standards established by the nightclub to promote a certain kind of atmosphere.  *Id.*  Further, the dancers did not have a final say on the type of music played, were

7

expected to mingle with customers when not dancing, and were forced to follow a series of other rules promoted by the nightclub regarding their behavior (e.g., no flat heels, no more than fifteen minutes at a time in the dressing room, all dancers "on the floor" at opening time). *Id.* The nightclub enforced these rules by fining infringers. *Id.* Thus, the Fifth Circuit determined this factor weighed in favor of employee classification. *Id.*

Conversely, in *Herman v. Express Sixty-Minutes Delivery Service*, the Fifth Circuit considered the first factor and found "independent contractor status" when a courier company exerted minimal control over its drivers. 161 F.3d 299, 303 (5th Cir. 1998). The drivers were allowed to set their own work schedules and to reject deliveries without retaliation. *Id.* Although preferred, the drivers were not required to wear a uniform. *Id.* Further, the drivers were able to work for other courier delivery companies, and their independent contractor agreement did not contain a covenant-not-to-compete. *Id.* Finally, while the drivers were required to attend an orientation and to be on-call, "these facts did not outweigh the other facts demonstrating a lack of control and independent contractor status." *Id.* To clarify its decision, the Fifth Circuit contrasted the courier company's employee drivers who, unlike the independent contract drivers, (1) reported to work at a specified time, (2) worked a set number of hours that were determined by the courier company, (3) were paid by the hour, (4) were required to wear a uniform, (5) were not allowed to turn down deliveries, and (6) were under the constant control and supervision of the courier company. *Id.*

Here, a fact issue exists concerning the level of control that Defendants exerted over Plaintiffs. Plaintiffs argue that Defendants exercise a substantial level of control over the dancers. Pls.' Mot. Partial Summ. J., ECF No. 40, at 10. However, the record contains evidence that contradicts Plaintiffs' argument. First, Mr. Fong testified that Defendants significantly

8

regulate dancers' shifts, requiring dancers to sign in when they report to dance by filling out a form that is kept in the front by the cashier. *Id.*, Ex. 1, at 11, 13. Further, Mr. Fong testified that Defendants impose a series of rules and instructions on dancers regarding the performance of their duties, including, but not limited to, paying rent charges that vary depending on the time at which dancers arrive to perform (e.g., "late shift dancers"). *Id.* at 22, 31. Mr. Granillo agreed in his testimony and added that Defendants fine dancers for failing to comply with shift rules and lengths. *Id.*, Ex. 2, at 21–22, 68.

This evidence, however, is undercut by Mr. Granillo's affidavit, in which he stated that Defendants do not exercise any control over dancers' shifts. Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 2. Mr. Granillo declared that Defendants do not impose "any control whatsoever" on when a dancer shows up to the nightclub or whether a dancer shows up at all, adding that Defendants never fine dancers for absences or tardiness. *Id.* at 3. He stated that there is no penalty for not showing up to the nightclub, and that dancers are not required to provide any notice regarding whether they are going to show up that day, the next day, or any day. *Id.* Additionally, Mr. Granillo declared that because dancers show up whenever they choose, there are no shifts. *Id.* at 7. Although Defendants have a schedule of rent that dancers are expected to pay, the amount of rent dancers actually end up paying is flexible, and Defendants adjust the rent payment on many occasions based on the amount of money dancers claim to make, which is "frequently understated." *Id.* Ultimately, Mr. Granillo stated that any attempt to "control" the dancers is like "herding cats." *Id.* at 4. Some dancers show up, check to see how busy the club is, and decide to come back later or not at all. *Id.* Dancers who decide to stay sign a list, not because Defendants regulate their shifts, but because club personnel needs to be aware of who is present in the event law enforcement shows up to check dancers' licenses. *Id.*

9

Second, according to Mr. Fong's testimony, Defendants set minimum amounts dancers can charge customers for dances.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 42, 73.   He testified that Defendants set the price of individual dances at $30 dollars.   *Id.*   Mr. Granillo added that Defendants fire dancers who do not comply with the set dance price.   *Id.*, Ex. 2, at 44.   However, this evidence is contradicted by Mr. Granillo's affidavit, in which he stated that dancers are free to collect as much money as they can in connection with their stage performances.   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 5.   Although $1-dollar dances on stage are common in the industry, Mr. Granillo asserted in his affidavit that customers are "free to pay as much as they choose for stage dances" and customers frequently pay more than $1 dollar for a quick stage dance.   *Id.*   Further, Mr. Granillo stated that "[a]s a practical matter, the market in the El Paso, Texas area along with the dancer's physical attractiveness set the rate for table dances."   *Id.* at 6.   Although the normal rate for table dances at almost every club in the El Paso area is between $20 and $30 dollars per table dance, dancers are free to charge $1 dollar per dance or $10,000 dollars per dance if they choose.   *Id.*   Further, Mr. Granillo stated that if a dancer and a customer agree to $30 dollars per dance, which is the typical rate, after or during the dance, the customer is free to tip extra and the dancer is free to collect as much as the customer is willing to pay.   *Id.*   According to Mr. Granillo's affidavit, Defendants do not fire dancers who do not comply with the $30-dollar table dance price, do not prohibit a dancer from negotiating with a customer an agreed higher rate than $30 dollars per dance, and do not fire a dancer for accepting a tip from a customer.[4]   *Id.*

---

[4] Mr. Granillo clarified that what Defendants do not tolerate is a pattern of repeated occurrences of dishonest behavior (e.g., dancers telling a customer that a table dance is $30 dollars, providing a customer with two table dances, and then demanding more than $60 dollars from a customer or refusing to provide a customer with the correct amount of change).   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 6.   In these situations, Mr. Granillo recognized that dishonest dancers are fired.   *Id.*

Third, in his deposition, Mr. Granillo testified that Defendants set rules regarding dancers' maximum amount of time in the dressing room and the time at which dancers must be on the floor. Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 25. Defendants' independent contractor agreement supported Mr. Granillo's testimony. *Id.*, Ex. 3, at 3. This evidence, however, is undercut by Mr. Granillo's affidavit, in which he stated that Defendants (1) do not limit dancers to a maximum amount of time in the dressing room, (2) do not have any rules permitting only one dancer in the restroom at a time, (3) do not have any rules setting the time by which dancers must be on the floor, and (4) do not require all dancers to be "on the floor" at opening time. Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 3. Although dancers are encouraged not to remain in the dressing room for more than one hour, this instruction is flexible and usually not enforced. *Id.* at 4.

Fourth, according to Mr. Granillo's testimony, Defendants significantly regulate dancers' conduct. Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 25–26, 32. Defendants' independent contractor agreement supported Mr. Granillo's testimony. *Id.*, Ex. 3, at 3. This evidence, however, is contradicted by Mr. Granillo's affidavit, in which he stated that Defendants do not exercise a substantial level of control over dancers, allowing them to chew gum, use cell phones, or carry hand bags while on the floor. Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 3. Moreover, he added that Defendants do not control dancers' costumes, dress, hair, makeup, shoes, weight, hair, hands, or toes while on the floor. *Id.* Even when dancers are not on the floor, Mr. Granillo asserted that Defendants do not expect them to mingle with customers when not dancing; that Defendants allow them to drink, if they are over twenty-one, regardless of whether the drink is provided by other dancers, customers, or themselves; and that Defendants do

11

not prohibit dancers from bringing their family members or friends to the nightclub.  *Id.* at 4.
According to Mr. Granillo's affidavit, if a dancer feels like being on her phone, sitting and talking
with friends, or partying instead of dancing, "nobody could or would force her to dance for that
matter."  *Id.* at 5.  Therefore, the Court finds that a fact issue exists regarding the degree of
control that Defendants exerted over Plaintiffs.

### 2.  Relative Investment of Plaintiffs and Defendants

Plaintiffs' investment was minimal compared to Defendants' investment and thus,
this factor weighs heavily in favor of employee status.

In *Reich*, the Fifth Circuit considered the second factor and found "employee
status" when a group of dancers' investment in costumes and a padlock was relatively minor
compared to the considerable investment of operating a nightclub.  998 F.2d at 328.   The Fifth
Circuit refused to consider as an investment each dancer's nightly "tip-out," which the nightclub
characterized as rent.  *Id.* at 327.   Although the record did not completely reflect the
nightclub's investment, it revealed that the nightclub owned the liquor license, owned music and
sound equipment, maintained and renovated the facilities, advertised extensively, owned the
inventory of beverages and refreshments, and leased fixtures (e.g., stage and lights).  *Id.* at 328.
Therefore, the Fifth Circuit held that the economic realities were consistent with classifying the
dancers as employees.  *Id.*

Conversely, in *Carrell v. Sunland Construction, Inc.*, the Fifth Circuit considered
the second factor and found "independent contractor status" when a group of welders who
worked for a pipeline construction company supplied their own trucks, welding machines, and
other specialized welding tools (e.g., cutting torches, welding leads, welding hoods, grinders,
gloves).   998 F.2d 330, 333 (5th Cir. 1993).   The welders' investment in their welding

12

machines, trucks, and tools averaged $15,000 dollars per welder.  *Id.*  The welders also assumed

all costs associated with operating, repairing, and maintaining their welding equipment.  *Id.*  The

welders provided their own lodging and meals on all projects, including the out-of-town projects.

*Id.*  Further, the company maintained a policy requiring the welders to provide their own general

liability and workers' compensation insurance.  *Id.*  Although the company did not supply any

essential equipment or welding tools to its welders, it did supply blades for the grinders and some

equipment to assist in cutting, supporting, and clamping pipes.  *Id.*  The company also owned a

"tack rig," which the welders used in areas where they could not physically use their own

rigs—which happened about one percent of the time.  *Id.*  As a result, the Fifth Circuit

determined that the economic realities were consistent with classifying the welders as independent

contractors.  *Id.* at 334.

Here, the Court finds that the relative investment factor weighs heavily in favor of

employee status.  Plaintiffs met their burden of establishing that their investment was less than

Defendants' investment.  A dancer's investment is limited to a $50-dollar fee for her license and

her costume, which, according to Mr. Granillo's testimony, only consists of undergarments (e.g.,

lingerie, bra, underwear).  Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 2, at 54–55.  On the other

hand, the nightclub's investment is significant.  Mr. Fong testified that the nightclub spends

between $448,000 and $520,000 dollars per year in maintaining and promoting the venue.  *Id.*,

Ex.1, at 49–55.

Defendants agree with Plaintiffs regarding this factor, claiming that "there is no

question that a dancer's relative gross economic investment is less than the club's."  Defs.' Resp.

to Mot. Partial Summ. J., ECF No. 41, at 12.  However, Defendants ask the Court to consider the

dancers' return on investment, arguing that "with many dancers earning $500 per night on

13

weekdays and $500–$1,000 a night on weekends, the return on investment for each dancer who spends a couple of hundred dollars is far greater than the club's return on investment." *Id.* Moreover, Defendants ask the Court to contemplate the dancers' personal and emotional investment, claiming that "[m]any women would [not] strip for any amount of money." *Id.* However, Defendants fail to provide a legal basis to support their arguments and a legal rationale as to why this Court should not adhere to the Fifth Circuit's reasoning in *Reich* and *Carrell*. Therefore, the Court finds that Defendants' investment was greater than Plaintiffs' investment and thus, this factor weighs heavily in favor of employee status.

### 3. Degree to which Defendants Determined Plaintiffs' Opportunity for Profit and Loss

A fact issue exists regarding the degree to which Defendants determined Plaintiffs' opportunity for profit and loss.    Plaintiffs claim that Defendants exercise a great degree of control over dancers' opportunity for profit and loss.    Pls.' Mot. Partial Summ. J., ECF No. 40, at 13. However, the record contains evidence that contradicts Plaintiffs' argument.

In *Reich*, the Fifth Circuit considered the third factor and found "employee status" when a nightclub exercised a great degree of control over its dancers' opportunity for profit.    998 F.2d at 328.    While the Fifth Circuit recognized that, once customers arrived at the nightclub, a dancer's "initiative, hustle, and costume" considerably contributed to the amount of her tips, it found that the nightclub had a "significant role in drawing customers to its location." *Id.*    The nightclub was responsible for advertisement, business hours, maintenance of facilities, aesthetics, inventory of beverages or food, and location.    *Id.*    Thus, given its control over "determinants of customer volume," the Fifth Circuit held that the dancers were "far more closely akin to wage earners tolling for a living, than to independent entrepreneurs seeking a return on their risky capital investments."    *Id.* (internal quotation marks omitted) (quoting *Brock*, 814 F.2d at 1051).

Similarly, in *Hopkins v. Cornerstone America*, the Fifth Circuit considered the third factor and found "employee status" when an insurance company controlled—almost entirely—the "major determinants of its sales leaders' profit or loss." 545 F.3d 338, 344 (5th Cir. 2008). The insurance company controlled the hiring, firing, and assignment of subordinate agents and, therefore, effectively regulated overwrite commissions (the sales leaders' primary source of income). *Id.* The insurance company further controlled the distribution of sales leads, and restricted the sales leaders from selling competing products. *Id.* Moreover, the insurance company unilaterally defined the sales leaders' territories, and it assigned competing sales leaders within these territories. *Id.* Finally, the insurance company prevented the sales leaders from owning and operating other businesses. *Id.* Thus, the Fifth Circuit held that the "opportunity-for-profit factor" in this case weighed in favor of employee status. *Id.* at 345. To clarify its decision, the Fifth Circuit distinguished its analysis from *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748, 752 (5th Cir. 1983).

In *Hickey*, the Fifth Circuit considered the third factor and found "independent contractor" status when a gas-products salesman's profit depended on his ability to increase customer volume through initiative and skill. *Id.* The Fifth Circuit concluded that these "determinants of customer volume, initiative and skill, were far more vital than those of price and territory," which were regulated by the company. *Id.* The salesman did not receive any salary or wages from the company. *Id.* at 750. His only compensation came from an eight-percent commission on sales of gas grills and gas lights. *Id.* However, he was able to exert initiative in the operation of his business, and the company did not exercise control over which customers the salesman called upon to his territory. *Id.* at 751–52. Further, the Fifth Circuit noted that the

salesman could sell competitors' products.  *Id.* at 750.   Therefore, the Fifth Circuit found

"independent contractor" status.  *Id.* at 752.

Here, a fact issue exists regarding the degree to which Defendants determined

Plaintiffs' opportunity for profit and loss.   Plaintiffs claim that Defendants exercise a great degree

of control over dancers' opportunity for profit and loss because Defendants are responsible for the

nightclub's advertisement, business hours, location, maintenance of facilities, aesthetics, and the

type of drinks served.  Pls.' Mot. Partial Summ. J., ECF No. 40, at 13.  This argument is

supported by Mr. Fong's deposition, in which he testified that Defendants spend between $8,000

and $10,000 dollars per month on radio and newspaper advertisements.  *Id.*, Ex. 1, at 50.  Mr.

Fong further added that Defendants decide, while dancers do not have any influence over, the type

of drinks that are provided to customers; the method by which to advertise the nightclub; the

amount of the cover charge; the total price that it takes to get into the nightclub; the way the

nightclub looks on the inside, including the lighting, the stage, the dressing rooms, and the

furniture; the nightclub's location; and the hours that the nightclub operates.  *Id.* at 48–51.

However, the record contains evidence that contradicts Plaintiffs' argument.

According to Mr. Granillo's affidavit, the determinants of customer volume are

mainly controlled by the dancers.   First, Mr. Granillo stated that a dancer's "opportunity for profit

and loss is determined primarily by her physical appearance."  Defs.' Resp. to Mot. Partial Summ.

J., ECF No. 41, Ex. 1, at 7.  Mr. Granillo declared that "physically attractive dancers make more

money than physically unattractive dancers."  *Id.* at 7–8.  Therefore, contrary to Plaintiffs'

argument supported by Mr. Fong's testimony, Mr. Granillo stated that customers never mention

attending the club because of "the location, the business hours, the selection of food or the

selection of soft drinks, which [is] generic."  *Id.* at 8.  Instead, customers go to strip clubs to see

physically attractive dancers.  *Id.*  Mr. Granillo asserted that customers routinely check to see who is performing and leave immediately if physically attractive dancers are not present.  *Id.* Conversely, customers stay and spend most of their money on "friendly, hygienic, physically attractive dancers," while "the most physically attractive dancers do [not] have to hustle."  *Id.* As a result, according to Mr. Granillo, physically unattractive women soon realize that "making money in the exotic dance business [is] fruitless."  *Id.*

Second, Mr. Granillo noted that a dancer's opportunity for profit and loss is also determined, to a lesser extent, by her personality and initiative.  *Id.*  Mr. Granillo stated that because most dancers who perform have no formal dance training, it also takes personality and "initiative to significantly improve in the art of dancing seductively" to attract customers.  *Id.* Further, Mr. Granillo's statement that Defendants allow dancers to work "wherever they want" also undercuts Plaintiffs' argument.  *Id.*  According to Mr. Granillo's affidavit, dancers are aware that they are free to perform their services at other places, even out of town or at other competing nightclubs around El Paso.  *Id.* at 7, 9. Therefore, the Court finds that a fact issue exists regarding the degree to which Defendants determined Plaintiffs' opportunity for profit and loss.

### 4.  Skill and Initiative Required

Plaintiffs' job did not require skill or initiative and thus, this factor weighs in favor of employee status.

In *Usery v. Pilgrim Equipment Co.*, the Fifth Circuit considered the fourth factor and found "employee status" when a group of operators of laundry pick-up stations lacked the skill and initiative indicative of independent contractors.   527 F.2d 1308, 1314 (5th Cir. 1976). The Fifth Circuit reasoned that "routine work which requires industry and efficiency is not

indicative of independence and nonemployee status." *Id.* The Fifth Circuit found that the key

ingredient in determining employee status was initiative. *Id.* The operators did not need "long

training or highly developed skills." *Id.* Moreover, they were unable to exert initiative in the

operation of their pick-up stations because all of the principal components open to initiative (e.g.,

advertising, pricing, choice of cleaning plants with which to deal) were controlled primarily by the

corporation for which the operators worked. *Id.* Further, the Fifth Circuit determined that

"customer rapport" was not an initiative characteristic and "much more closely parallel[ed]

efficiency." *Id.* Therefore, the Fifth Circuit concluded that the skill and initiative factor pointed

toward employee status. *Id.*

Similarly, in *Reich*, the Fifth Circuit considered the fourth factor and found

"employee status" when a group of dancers did not have prior experience with exotic dancing

before working for a nightclub. 998 F.2d at 328. The dancers did not need "long training or

highly developed skills" to perform at the nightclub. *Id.* Moreover, their initiative was

essentially limited to choices regarding their dance routines and costumes. *Id.* The Fifth Circuit

further noted, adhering to the reasoning in *Usery*, that "the ability to develop and maintain

rapport with customers [was] not the type of initiative contemplated by this factor." *Id.*

(internal quotation marks omitted) (quoting *Usery*, 527 F.2d at 1314). Thus, the Fifth Circuit

held that the dancers did not "exhibit the skill or initiative indicative of persons in business for

themselves." *Id.*

Here, the Court finds that the skill and initiative factor weighs in favor of

employee status. Plaintiffs met their burden of establishing that their job did not require

the skill and initiative indicative of independent contractors. Dancers are not required to have any

training or prior experience to be hired to perform. *Reich*, 998 F.2d at 328. Mr. Fong testified

18

that (1) the nightclub does not require dancers to have prior experience, (2) in many cases, the nightclub represents the first time that a dancer will perform, and (3) the nightclub does not require dancers to undergo training.   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 47.   Further, dancers' initiative is essentially limited to choices regarding their dance routines and costumes. Dancers are unable to exert initiative because all of the principal components open to initiative are controlled primarily by the nightclub.   *See Usery*, 527 F.2d at 1314 (explaining a lack of initiative when advertising, pricing, and other components of the operation of a business are primarily controlled by the corporation).   Mr. Fong testified that the nightclub decides, while dancers do not have any influence over, the operation of the venue (e.g., the hours that the nightclub operates, the type of drinks served, the amount of the cover charge, the method by which to advertise the nightclub).   Pls.' Mot. Partial Summ. J., ECF No. 40, Ex. 1, at 48–51.   Moreover, adhering to the Fifth Circuit's reasoning in *Usery* and *Reich*, the Court finds that customer rapport is not the type of initiative characteristic recognized by this factor.

Defendants argue that although most dancers who perform at the nightclub have no formal training, many have significant experience in the strip club business and perform outstanding routines on stage.   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 14.   Mr. Granillo agreed in his affidavit.   *Id.*, Ex. 1, at 8.   However, that some dancers have experience or perform outstanding routines on stage does not override the fact that no training or skills are necessary to perform at a nightclub.   Consistent with the Fifth Circuit's holding in *Reich*, the Court finds that dancers do not need prior experience or highly developed dance routines to do their job.   Further, regarding initiative, Defendants argue that "actually showing up to perform" is the "most obvious initiative required to succeed in any business."   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 14.   However, as the Fifth Circuit reasoned in *Usery*, the Court

19

determines that this is not the type of initiative characteristic recognized by this factor and more closely parallels efficiency. 527 F.2d at 1314. Therefore, the Court finds that the skill and initiative factor weighs in favor of employee status.

### 5. Permanency of Relationship

A fact issue exists regarding the permanency of the relationship between Defendants and Plaintiffs. Plaintiffs claim that this factor weighs in favor of employee status because Defendants make it difficult for dancers to perform at other venues. Pls.' Mot. Partial Summ. J., ECF No. 40, at 14–15. However, the record contains evidence that undercuts Plaintiffs' argument.

In *Reich*, the Fifth Circuit considered the fifth factor and found that, although this factor is entitled only to modest weight in assessing employee status under the FLSA, the "impermanent relationship" between a group of dancers and a nightclub reflected "independent contractor status." 998 F.2d at 328. Most dancers had short-term relationships with the nightclub. *Id.* Further, the dancers were allowed to move from nightclub to nightclub. *Id.* Thus, the Fifth Circuit held that this factor weighed in favor of non-employee status.

Similarly, in *Thibault*, the Fifth Circuit considered the fifth factor and found "independent contractor status" when a splicer, who was hired to repair a telecommunications grid after a hurricane, did not work exclusively for a company. 612 F.3d at 846. The splicer had his own business selling picnic tables, storage buildings, and customized golf carts in his home state. *Id.* Further, the Fifth Circuit noted that the nature of splicer work required moving to different parts of the nation, as splicers traveled from job to job and from state to state looking for work. *Id.* The hurricane project lasted only for a limited period of time. *Id.* Therefore, the Fifth Circuit determined that the splicer was an independent contractor. *Id.*

Conversely, in *Usery*, the Fifth Circuit considered the fifth factor and found "employee status" when the permanency of the relationship between a group of operators of laundry pick-up stations and a corporation evidenced dependency.   527 F.2d at 1314.   The contract involved in this case was for one year, but it was routinely renewed.   *Id.*   Further, many of the operators who had previously served as employees of the corporation were essentially performing the same functions as operators.   *Id.*   Moreover, the Fifth Circuit noted that not a single operator was capable of terminating relations with the corporation and taking her organization to another laundry.   *Id.*   Therefore, the Fifth Circuit found employee status because "the plain fact of the matter [was] that every one of them [was] dependent upon the corporation's continued employment."   *Id.*

Here, a fact issue exists regarding the permanency of the relationship between Defendants and Plaintiffs.   Plaintiffs claim that this factor weighs in favor of employee status because Defendants require dancers to keep their licenses on the premises, making it difficult for them to work at other nightclubs without violating the law.   Pls.' Mot. Partial Summ. J., ECF No. 40, at 14.   Mr. Fong testified that Defendants require dancers to keep their physical licenses at the nightclub.   *Id.*, Ex. 1, at 19, 21.   Mr. Granillo agreed and testified that when dancers leave for the night, their licenses remain on the premises unless they ask for them back that same night.   *Id.*, Ex. 2, at 56.   However, the record contains evidence that contradicts Plaintiffs' argument.[5]

According to Mr. Granillo's affidavit, because dancers are allowed to work "whenever they want and wherever they want," Defendants do not require them to keep their licenses on the premises.   Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, Ex. 1, at 8.   Instead,

---

[5] The Court notes that many contradictions exist between Mr. Granillo's deposition testimony and his affidavit.

Mr. Granillo explained that the law enforces this requirement. *Id.* Just as the law requires dancers to be at least eighteen years old to perform and at least twenty-one years old to drink, El Paso County requires dancers' licenses be kept "on the premises where the licensee is then working or performing." Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 15. However, Mr. Granillo stated that every dancer is aware that she is free to pick up her license whenever she wants, and many frequently do so. *Id.*, Ex. 1, at 9. Dancers are not restricted to dancing for Defendants at the nightclub, and they are "free to dance at any other club in El Paso or out of El Paso." *Id.* at 7. Mr. Granillo stated that dancers frequently dance at other nightclubs in El Paso and sometimes leave El Paso for the weekend to dance in the Midland and Odessa areas. *Id.* Mr. Granillo further declared that dancers are free to return and perform for Defendants at any time "without consequence." *Id.* Because Defendants "do not impose any control whatsoever on when a dancer shows up to the club or whether a dancer shows up at all," Defendants argue that an impermanent relationship exists between the parties. *Id.* at 3; Defs.' Resp. to Mot. Partial Summ. J., ECF No. 41, at 15–16. Therefore, the Court finds that a fact issue exists regarding the permanency of the relationship between Defendants and Plaintiffs.

## CONCLUSION

A genuine issue of fact exists as to whether Plaintiffs were Defendants' employees within the meaning of the FLSA and, thus, subject to the FLSA's minimum wage and overtime provisions. In determining whether an individual is an "employee" within the meaning of the FLSA, five factors must be considered and weighed. The Court finds that the second and fourth factors weigh in favor of employee status under the FLSA. However, partial summary

judgment cannot be granted because a fact issue exists regarding the first, third, and fifth factors.

Accordingly, the Court denies Plaintiffs' Motion.

          **SIGNED** this **16th** day of **January 2018**.

                                      **DAVID BRIONES**
                    **SENIOR UNITED STATES DISTRICT JUDGE**